HOWARD, Circuit Judge
(dissenting).
Because our decision to remand rests wholly on a claim for equitable relief that is not properly before us, I respectfully dissent.
“There are few principles more securely settled in this court than the principle which holds that, absent exceptional circumstances, an appellant cannot raise an argument for the first time in a reply brief.” N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 45 (1st Cir.2001). We have long held, “with a regularity bordering on the monotonous,” that such arguments are deemed waived, and with good reason: an appellee cannot conscionably be expected to respond, in any meaningful fashion, to claims and allegations of which it has no prior notice. Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir.2000); see also Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2.d 1, 3 (1st Cir.1979) (Breyer, J.) (“In preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant’s brief for the scope of the issues appealed, and appellant generally may not preserve a claim merely by referring to it in a reply brief or at oral argument.”). Maintaining this adversarial balance throughout the appellate process is a compelling interest, one that should be contravened only under extenuating circumstances beyond the parties’ control, e.g., where the applicable law substantially changes after the opening briefs are submitted. See, e.g., United States v. Vazquez-Rivera, 407 F.3d 476, 487 (1st Cir.2005).
Nor, under equally settled precedent, do we generally credit arguments that are “adverted to in a perfunctory manner [or] unaccompanied by some effort at developed argumentation,” regardless of where they appear in a party’s briefs. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990). As we have had frequent occasion to observe, a court should not be left to “do counsel’s work, create the ossature for the argument, and put flesh on its bones.” Id. We are not mind readers, and to assume that burden by unilaterally cultivating an appellant’s claims raises a host of concerns, both procedural and substantive.
These are familiar rules of general applicability, administered with as much force in the habeas context as in any other. Indeed, we have shown no reluctance to deem arguments waived, including equitable tolling claims, that were belatedly or otherwise inadequately raised by petitioners seeking federal habeas relief. See, e.g., Glacken v. Dickhaut, 585 F.3d 547, 551 (1st Cir.2009) (holding that a habeas petitioner waived an argument to which he devoted only a single line in his opening brief); DeBurgo v. St. Amand, 587 F.3d 61, 72 n. 14 (1st Cir.2009) (finding a claim arguably waived where it comprised only four sentences of the habeas petitioner’s opening brief); Trenkler v. United States, 268 F.3d 16, 26 n. 9 (1st Cir.2001) (deeming waived a perfunctory equitable tolling claim raised for the first time at oral argument); see also McClaran v. Cockrell, 58 Fed.Appx. 595, 2003 WL 261773, at *1 (5th Cir.2003) (holding that a new equitable tolling argument raised for the first time in a habeas petitioner’s reply brief had been waived); Gomez v. Castro, 47 Fed. *69 Appx. 821, 822 n. 2 (9th Cir.2002) (same); cf. Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 354 (1st Cir.1992) (“[The nonhabeas appellant] did not make [the] equitable tolling argument in his opening brief. Rather, the asseveration surfaced for the first time in his reply brief. It is well settled in this court, for good reason which need not be rehearsed here, that a legal argument made for the first time in an appellant’s reply brief comes too late and need not be addressed.”).
On the contrary, these rules should be especially potent in the realm of equitable tolling, where the claim must identify an obstacle to timely filing that is both “rare” and “extraordinary”; typically, something patently obvious on the face of the record, and therefore not easily disregarded by a claimant absent some dilatory intent. See Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir.2007) (restricting application of the equitable tolling doctrine to “extraordinary circumstances”). Thus, without a truly exceptional reason — something beyond the notion that this might be a petitioner’s last bite at the apple — -we should not revive tardy or perfunctory equitable tolling arguments which “the party who seeks to invoke [the doctrine] bears the burden of establishing....” Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir.2001).
Yet, here, although the record is devoid of any discernibly exceptional circumstances, we remand for consideration of an equitable tolling argument that plainly fails to clear either of these long-standing procedural hurdles. The petitioner’s briefing is unequivocal — he advances two, and only two, cognizable grounds for equitable relief: (1) the allegedly egregious nature of his trial counsel’s Rule 29 advice; and (2) the prison’s purportedly draconian library policies. Both are ably dispatched by the majority, and that should be the end of it.
Instead, we solicit further deliberation on a “third” equitable tolling argument: that the petitioner was misled by the prison’s boilerplate Rule 29 forms. The trouble is, this claim was only raised, if at all, for the first time in a single sentence of the petitioner’s reply brief, and then only in relation to the merits of his Rule 29 claim. Specifically, in asserting that his Rule 29 motion was properly filed under Massachusetts law, the petitioner notes only that “the [Rule 29] Motion and Affidavit which [the petitioner] filed are handwritten onto xeroxed forms, which are provided to incoming prisoners when they arrive at [the prison].” Nowhere is this statement framed as a justification for equitable remediation, and its cursory nature does not even begin to approach the level of development traditionally necessary for consideration on appeal. This is not, as the majority suggests, a simple case of a party failing to apply the “necessary label” — rather, it is a classic example of waiver by inadequate argument.[7] In es *70 sence, we manufacture the appellant’s claim, effectively precluding the appellee from delivering a satisfactory response. This, I think, is beyond our proper province, and therefore I cannot join in remanding on this ground.[8]
Even if this equitable tolling claim had been properly preserved, and the prison had advised the petitioner that his boilerplate forms complied with the strictures of Rule 29, we still should not remand, because it is far from apparent that such conduct qualifies as an extraordinary circumstance sufficient to trigger equitable relief.
Starting from scratch, as it must given the petitioner’s failure to cite any relevant authority whatsoever, the majority suggests that Williams v. Thaler, 400 Fed.Appx. 886 (5th Cir.2010), might inform the district court’s equitable tolling analysis. Thaler, however, is distinguishable in several "critical respects. There, the state court had repeatedly notified the petitioner that his state habeas petition was pending, when in fact it had already been denied. Because there was no alternative source for the information, or additional action that the petitioner could have taken to remedy the error, the court’s misleading advice made it virtually impossible for the petitioner to meet AEDPA’s stringent timeliness requirements with respect to his subsequent federal petition. Here, by contrast, the petitioner was instructed (maybe erroneously) how to file, rather than being told that he had already properly done so; the advice came not from the court itself, but from some heretofore unidentified member of the prison staff; and perhaps most importantly, the petitioner still had a wealth of opportunities to remedy any error and to verify the appropriate filing procedures (including opportunities to conduct his own independent research). In other words, the prison’s actions here did not foreclose the petitioner’s ability to properly file his Rule 29 motion, and consequently, to timely file the federal petition now at issue.
These distinctions are not academic, and indeed they form the basis for several federal decisions on somewhat analogous facts. In Alexander v. Schriro, 312 Fed.Appx. 972 (9th Cir.2009), for example, no extraordinary circumstances were found where a member of the prison staff offered misleading advice to a federal habeas petitioner in calculating the applicable limitations period. Distinguishing from cases where “a prison official’s wrongful conduct prevents a petitioner from filing,” the court explained that “in this case, the *71 [prison staff] did not do or fail to do anything that actually made it impossible for [the petitioner] to file on time.” Id. at 975 (internal citations omitted); see also Henderson v. Nooth, No. 3:07-CV-01823-JO, 2012 WL 1801736, at *4 (D.Or. May 16, 2012) (finding that erroneous filing advice from a prison staff member, “while extremely unfortunate,” does not rise to the level of extraordinary circumstances because it did not “ma[k]e it impossible for petitioner to file on time”); Madison v. Hulihan, No. 09-CV-337, 2012 WL 1004780, at *4 (E.D.N.Y. March 23, 2012) (rejecting claim of equitable tolling where state-provided habeas forms lacked information about AEDPA filing requirements, and holding that “a state-created impediment can warrant equitable tolling [only] in the rare instance where the state ‘effectively prohibits’ the petitioner from pursuing a habeas petition”); Dulaney v. United States, Nos. 6:08-cv-00859, 6:09-cv00372, 2011 WL 4436639, at *2 (S.D.W.Va. September 23, 2011) (refusing to apply equitable tolling where habeas corpus forms supplied by the prison appeared to inform petitioner (in error) that he could not file his federal habeas petition until he completed his state sentence and began serving his federal sentence); Elliott v. Napoli, No. 07-CV-3942, 2010 WL 1816406, at *2 (E.D.N.Y. May 4, 2010) (“Simply, falling victim to the incompetence of nonlawyer [prison library staff] is ... not an extraordinary circumstance.”); James v. Hudson, No. 1:07-CV-3651, 2009 WL 111637, at *8 (N.D.Oh. Jan. 15, 2009) (“The fact that, instead of himself ascertaining the relevant law, [the petitioner] chose to rely on [prison] library clerks for such critical information does not make that choice an extraordinary circumstance that stood in the way of compliance with the time requirement and now justifies equitable tolling.”); Roman v. Artuz, No. 00-CIV-1400-DLC, 2000 WL 1201392, at *2 (S.D.N.Y. Aug. 22, 2000) (finding that prison law clerks’ erroneous advice that a state FOIA request would toll AEDPA’s statute of limitations was not an extraordinary circumstance).
This, of course, is not intended to be an exhaustive collection of applicable authority; that was for the petitioner to provide. Nonetheless, pursuant to the prevailing authority, it is likely that the prison’s allegedly inaccurate filing advice — whether that encompassed the mere dissemination of boilerplate forms or, at worst, also in-' eluded verbal assurances that such forms were sufficient for filing purposes — does not rise to the extraordinarily high level required for the application of equitable tolling.
Finally, though no less significantly, even if the prison’s actions do constitute an extraordinary circumstance, the petitioner has still failed to demonstrate that he pursued his rights diligently during the more than two-year gap between June 17, 1998 and August 17, 2000, when he remained idle despite his pending Rule 29 motion. The only conceivable basis for the motion — the petitioner’s anticipated cooperation with the government on another case — was well known to the petitioner at the time that the motion was originally filed. Had he simply employed that knowledge and requested a hearing within a reasonable period of time, all of these issues could easily have been averted. Neither the petitioner nor the majority provide an acceptable explanation for this extended period of inactivity.[9]
*72 For these reasons, I would excise any treatment of the putative equitable tolling argument, join the court’s otherwise well-reasoned opinion, and affirm the order of the district court.

. The majority notes that we have the discretion, in certain circumstances, to overlook waiver by inadequate argument. See, e.g., Costa-Urena v. Segarra, 590 F.3d 18, 30 (1st Cir.2009). Those circumstances are absent here. Such discretion is not unfettered, and should be used sparingly. As we have previously stated, "courts should be reluctant to act affirmatively in identifying and supporting arguments that could have been, but were not, made by a party. At a bare minimum, such an action should be reserved for circumstances in which there is some likelihood that the ultimate outcome would change in the assisted party’s favor." United States v. Vega Molina, 407 F.3d 511, 534 n. 7 (1st Cir.2005). Since, as the majority acknowledges, it "cannot say what the result should be" even if this equitable tolling argument is resuscitated, and because this case presents none of the special circumstances that typically form the basis for overlooking waiver, see, e.g., Nat’l Org. for Marriage, Inc. v. McKee, 669 F.3d 34, 43 (1st Cir.2012) (overlooking waiver by inadequate argument because of importance of issues *70 raised and extent of resources expended in expansive litigation); Costa-Urena, 590 F.3d at 30 (overlooking waiver by inadequate argument where argument would likely change the outcome); United States v. Leavitt, 925 F.2d 516, 517 (1st Cir.1991) (overlooking waiver by inadequate argument of a sentencing guidelines issue where the guidelines were relatively new, the issue was purely legal, and the sentencing differences were so great as to bring about a serious miscarriage of justice if he is legally right), I see no reason to take such a course of action here. See Nat'l Ass’n of Social Workers v. Harwood, 69 F.3d 622, 627 (1st Cir.1995) ("[T]he raise-or-waive. principle [may not] be dismissed as a pettifogging technicality or a trap for the indolent; the rule is founded upon important considerations of fairness, judicial economy, and practical wisdom.”).

. The majority suggests that because Kholi v. Wall, 582 F.3d 147 (1st Cir.2009) had yet to be decided, the petitioner had no cause to raise the issue before the district court. That may be, but it does not excuse his failure to do so in his opening appellate brief, where we explicitly requested that counsel discuss the Rule 29 issues in light of Kholi, or his failure to do so sufficiently in his reply brief, after the Commonwealth had expressly called the procedural validity of his Rule 29 motion into question.

. The majority states only that, during this time, Holmes's correspondence with his trial attorney "suggests that Holmes may have been waiting to learn whether the prosecutor wanted information from him” about the other case. A two-year period of inactivity, interrupted only by occasional correspondence with his trial attorney, does not seem to meet *72 the level of reasonable diligence necessary to ground a claim of equitable tolling. See, e.g., LaCava v. Kyler, 398 F.3d 271, 277-78 (3d Cir.2005) (deciding not to remand the appellant’s habeas petition for an evidentiary hearing on the availability of equitable tolling where he allowed twenty-one months to lapse between the filing of a state court motion and his subsequent inquiry as to its status). In any event, it should not be left to the court to comb the record for favorable facts supporting remand. Pursuing one's rights with reasonable diligence is one of two prongs that the petitioner must show to meet the high burden for equitable tolling. Holland v. Florida, -U.S.-, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010) (holding that a "petitioner is entitled to equitable tolling only if he shows ... that he has been pursuing his rights diligently....”) (emphasis added). Holmes did not even attempt to make that showing here.